May it please the court, the final summary judgment in this case should be reversed and the case is dismissed for lack of subject matter jurisdiction. For the failure of Austin Property Associates to provide credible, competent summary judgment type evidence to establish that the amount in controversy exceeded the jurisdictional threshold of $75,000. The damages that were submitted in support of the amount in controversy are three categories. The first category is attorney's fees and there was an affidavit by APA's counsel that said that prior to filing this lawsuit they had incurred $30,000 in attorney's fees in attempting to make Huntington Beach or HB 2 pay $5,400 to them that they claimed that were owed. The amount in controversy as far as money damages in this case is $5,400 and the attorney's fees that have been incurred are not recovered under Texas law. The statute that is pled is a breach of contract claim by APA against HB 2 and the statute that is pled is Texas Civil Practices and Remedies Code Section 38.001 which is the Texas statute that when a party has a breach of contract claim against someone, that they have the opportunity to recover reasonable and necessary attorney's fees. The reason that the attorney's fees, whether it be the pre-suit attorney's fees of $30,000 or the speculative attorney's fees that the affidavit of Mr. Matka said would constitute at least $75,000 that they would spend in this case. The reason that those don't even become a consideration of the amount in controversy is because the state of Texas says that an LLC, when you're suing an LLC such as Huntington Beach 2 LLC, you don't get to recover under the statute of 38.001. So therefore, we don't even have to talk about whether or not attorney's fees would be added to the amount in controversy because they can't recover them under Texas law. The next damage category would be the insurance that they claim that they would have to put on the property because this dispute, as the district court said, this dispute really was about whether or not Huntington Beach 2 had actually complied with the master lease of the property. Providing the insurance that was called for by the master lease. So it said it was two integrated issues. One, the extent to which HB 2 was obligated to maintain and keep in effect insurance. And two, the extent to which it did that. The evidence that was submitted was the corporate representative affidavit of Mr. Tom Kios. And the evidence on the insurance that they would supposedly have to put on this property was based on an email from an insurance salesman. The email, the insurance salesman in the email said that he consulted an insurance broker and that based on some other piece of property that they thought was maybe similar to this property, it would probably cost, they would estimate, between $31,000 and $34,000 a year. So Mr. Kios testified that I just doubled the $34,000 and so the amount of insurance to add into the amount of damages for the insurance that we would have to put on this property is $68,000. Well, there's absolutely no rationale as to why you would double, why do you double the amount of money? But the key here is that the evidence is hearsay. It's hearsay within hearsay. It was not the testimony of Mr. Kios. It was an email from his insurance salesman who had talked to an insurance broker. The trial court erroneously overruled my objections to that affidavit with respect to the amount of insurance based on hearsay. This court, because it is plain error by the district court in not sustaining my objection to hearsay, this court can rule and look at the evidence, the exact same evidence that the district court looked at, and sustain the hearsay objection and find that it's not competent summary judgment evidence. Counsel, a good part of your time is already gone. I think the key issue here is probably the lost rent. Why don't you address that? Yes, sir. Key issue on the amount of controversy. Yes, on the amount of controversy. Thank you, Robert. So that's the second, that's the last category. And according to APA, it is the object, the declaratory judgment act, it is the value of the object of the lease or the cause of action. And in this case, it's a lease. Well, the evidence that was submitted is not in line with Texas law on when they submitted $125,000 as to if they had to terminate the lease. When the affidavit was given, there was no termination of the lease. HB 2 was paying the lease payments. And what they said is, well, if we have to terminate this lease, which they ultimately did wrongly, if we have to terminate this lease, then there's $4,824 of rent, and you multiply that by 26 months, and therefore you end up with $125,000 in amount of controversy. Well, under Texas law, when you're going to determine what the value of a lease is, and if that's part of what their declaratory judgment is, is the value of the lease, although it's not clear that that's what their declaratory judgment is. But there are four ways in which a landlord typically goes in and establishes the damages related to that amount. In this particular case, there are zero damages because they terminated the lease. Under Texas law, in the Austin Hill Palisades Plaza case, it described the four ways in which a landlord would recover damages and what the damages are. It says the fourth, the landlord can declare the lease terminated, and if it does so, it relieves the tenant of liability of future rent. So that's zero damages. They've terminated the lease, and if they've terminated the lease, HB 2 doesn't owe any more money. What would be the basis of the termination? It's the tenant's action, right? The basis of the termination was the court's finding in the interlocutory partial summary judgment that the evidence that HB 2 had given to the court did not establish that it had had actually complied with the specific terms of the lease. But, Your Honor, what should have happened at that point in time is in the Declaratory Judgment Act, you can have a hearing on a declaratory judgment, and then subsequent, you can have a hearing on damages. And that didn't happen in this case. Upon a reasonable notice and then another hearing, you can have it on damages. The lease is in evidence, and the rent is evident from the lease. The rent, my understanding is the way that you would look at the rent, it's not determinable by the lease itself. You can't – APA said that you looked at the lease and that it is facially apparent as to what the amount of damages is. You can't do that on a lease that has – first of all, you would have to go through the provisions. It's not – it's, number one, not facially apparent because they didn't plead it. They've never pled for any of those things. The lease is in evidence, isn't it? I'm sorry? The lease is in evidence. The lease is in evidence, but it is a lease in which the – you would have to calculate whenever a – the lease would terminate. You wouldn't know when that would be. And it's certainly not based on the evidence that they've put before the court because what they did is terminated the lease within 21 days of the court's interlocutory summary judgment. What they should have done is send a notice of default. That's why I don't understand why the termination matters because it was after the lawsuit was filed, right? It was. And isn't subject matter jurisdiction determined at the time of the filing of the lawsuit? It is. So you can't just – no one knew there was a termination at that point. That's correct, and so the evidence that they submitted on the $125,000 was based on a prospective termination of – that didn't happen. In other words, there would have to be a condition preceded. That is, somehow there had to be a termination, and at the time that they submitted their evidence of $125,000, there had been no determination. And so that's why that evidence, besides that it doesn't comply with what – if there was going to be a termination, it should have complied with the Texas law that when you go into – you could repossess property without terminating the lease. But what they did is they entered into the lease with our subtenant. They took the delta between what our client got from the lease. They cut us out of the middle, and then they entered in immediately upon termination of the lease. They entered into a lease with the subtenant. So what? So what? So they have zero damages. No, but that's not what it was when the suit was filed. That's right. We were paying them rent when the suit was filed. The suit was filed because all that they wanted – And all you have to do is look at the rent and calculate – look at the lease, calculate the rent, and that takes care of your quantum. Well, the only reason that that wouldn't be correct, Your Honor, is because you wouldn't know when to start calculating. You calculated on the date that you filed suit. At that time, there's no termination of the lease. Right. So the future rent is counted for purposes of the sufficiency of the amount in contrast. But they have not – if that's the case, and then they enter into another lease, there's zero damages. That's all after the fact. I'm sorry? That is all after the fact. Yes, sir, it is. And that's why at the beginning, at the time that the lawsuit was filed, there was absolutely no basis for them to seek any damages related to a termination of a lease. All they wanted from the court was a determination that we had an obligation to provide insurance on the property and that the insurance that we were providing and had been providing for 10 years didn't comply with the lease. Counsel, I might suggest we just have a minute or so left. If there's anything else you want to raise, this might be a good time to turn to it. Thank you, Your Honor. With respect to the court's rulings after the termination, it's our position that what should have happened is there should have been a notice of default notifying us that we had defaulted on the lease. They knew how to send a notice of default because they had previously done so, even though it was based on a duty to defend that didn't exist. So in the record, there's a notice of default, but it doesn't say anything about insurance. What they should have done is once there was a declaration that the evidence that my client supplied did not comply with the lease terms, then they should have sent a notice of default saying the court has now, under the Declaratory Judgment Act, said what you thought was right insurance is no longer right insurance. Then when we sought leave after they wrongly terminated it without giving us notice of default, the court wrongly did not allow us to bring the counterclaims or the amended pleadings in the case. Thank you. All right, Counsel. Thank you. We have your brief on most of that. We have your brief on most of your arguments, so even though you didn't get to get to them, you can have a seat. All right. Please support. My name is David Mack. In the context and spirit of a de novo review at this level, I'm going to suggest to this court that the record reflects and supports a conclusion and a finding that the amount of controversy in this case actually exceeds $5 million. And let me show you how I get there. In the Austin Property Associates Declaratory Judgment, it sought really two things. One, to compel lease compliance on the insurance requirement. Secondly, if compliance could not be compelled to terminate the lease. The insurance was clearly designed to protect the economic interest of the owner, the landlord, in this property. The value of the right to be protected in this declaratory judgment action seeking to compel insurance was the contractual right to have the lessee obtain the insurance to protect the property against an uninsured loss. The extent of the injury to be prevented is that uninsured loss. And here, based upon the undisputed record, and I'm going to direct the court to what I will call the second Kiosk Affidavit, it's Exhibit A to Austin Property Associates Motion for Summary Judgment in the record at 342. In that affidavit, Mr. Kiosk, as the corporate representative for Austin Property Associates, testifies that the value of the property in question exceeds $5 million. That testimony is admissible under Texas law as a lay opinion under Texas Rule of Evidence 701. And there are multiple cases, and we cite one in our summary judgment reply papers, that support the proposition that a property owner can testify and express a lay opinion about the value of that property owner's property. That affidavit, that $5 million valuation, goes unchallenged in the record. It is undisputed, and therefore the value of the right to be protected and the injury to be prevented is the value of the property, which exceeds $5 million. Alternatively, I'll step to the termination issue, the $125,000 issue. It was never our objective when we filed this lawsuit to terminate the lease. Our objective was lease compliance by our lessee with respect to what we viewed to be a clear obligation to place insurance on the property to protect our interests. In the event, however, that we were forced to terminate, we recognized, APA recognized, that it would potentially forego lease payments over the balance of the lease term. And the balance of the lease term at the time we filed this lawsuit was 26 months, and the lease, as your Honor pointed out, is in evidence. It is attached as an exhibit to our complaint, and the mathematical calculation is $4,825 a month in lost lease payments over a 26-month term remaining on the lease. Or $125,424, setting aside other maintenance and taxes and other costs that our tenant was required to pay on top of the lease payments. So either from the face of the lease as attached to the complaint or from the first kiosk affidavit, which we tendered to the court in response to the first motion to dismiss, Mr. Kiosk provides exactly that same calculation of $125,000. So whether you're talking about what's apparent from the lease itself or from the kiosk affidavit, we have either, it's either facially apparent or we provided by preponderance of the evidence sufficient proof to establish that the amount of controversy in this case, this declaratory judgment case, exceeded $75,000. And what counsel has done for you in the briefing and here today is conflate a damage claim for lost rent versus what was the injury we sought to prevent by filing a declaratory judgment seeking to compel lease compliance. We sought to prevent a loss of $125,000. We didn't sue to recover $125,000. And that's why this, what were your damages at the time of filing of the complaint is not the operative analysis for the court. The third way in which we got to the question of subject matter jurisdiction at $75,000 is the combination of our calculation of what it would cost to place the insurance that the lease required over the balance of the lease term plus our accrued and unaccrued attorney's fees. Let me talk first about the cost to place the insurance. Counsel suggested that we took a number from an insurance broker and simply doubled the number. What we did was make reasonable inquiry from an experienced broker about what it would cost to provide the insurance, a rational approach, and we got an estimate of $31,000 to $34,000 per year, per hour. We doubled that over the remaining two years of the life of the existing term. That's where the doubling comes from. It's not arbitrary. It's math. And that gets us to at least $68,000 as a cost to provide the insurance that our tenant refused to provide. What about his hearsay objection to that? Your Honor, we took a reasonable, it's as if you ask me, how much does a new TV cost? And I go online and I look it up and I say, judge, it's going to cost $600 for the model that you want. Is my testimony hearsay? I don't think so under the circumstances because I'm telling you what I understand to be the cost. Right, but it's sort of like a lot of these evidentiary questions. It's how it's presented. So if the affidavit said I investigated this and I determined the reasonable amount of insurance is X, then I agree with your analogy. But it looked more just like here's this e-mail from someone that establishes it. What the affidavit says, what Mr. Keogh says is in order to determine, and I'm paraphrasing, in order to determine it, I've got the affidavit here, I can read it rather than that. Here is a true and correct copy of an estimate I requested regarding the annual premium to place. In other words, he went out and made the inquiry. And that under the circumstances is reasonable and rational and probably the only way you could make that determination is to ask someone who knows. With respect to the attorney's fees, Your Honor, I concede counsel's citation to the case that holds that LLCs are not corporations or persons or individuals under the Texas statute. But our conversation doesn't end there on attorney's fees because what we were seeking on the attorney's fees is the amount of fees as an element, a core element of our damage claim. Our contract required our tenant to hold us harmless and to save and to indemnify us against costs and expenses associated with personal injury claims on the property. That's precisely what we did here and what we sought to be reimbursed were the costs associated with getting our client or attempting to get our tenant to comply with its lease obligations. We are not seeking the attorney's fees as a statutory adjunct to an otherwise, a breach of contract claim. These are damages that are core to the claim itself. And to the extent that we had approved fees of $30,000 on the day we filed this lawsuit, my affidavit proves that. Counsel complained that I didn't attach time records and therefore it's not admissible. I would suggest and direct the court to what is in the record on top of the $68,000 we're talking about, a letter from me dated March 6, 2016 to Huntington's lawyer. It's in the record at $225,000. It's attached as an exhibit to their answer. And in it, I supply the time and billing entries to support at least $15,000 in unapproved or approved but unpaid, unreimbursed fees as of March 2016, roughly six months before we filed this lawsuit. At the time we filed this lawsuit, I updated that number to $30,000. I concede that I did not attach time records to prove the incremental $15,000, but the record does establish the $68,000 plus the $15,000 based on time entries in the exhibit that I just recited to the court. We get over $75,000 no matter how you do the math, and we don't even need to get into the argument about unaccrued fees that this court has recognized can be accounted for as an element of the amount in controversy. And I'll rely on our brief for the remainder of that dispute. One thing counsel mentioned towards the end of his argument was that we had not provided notice of default and opportunity to cure. Our lease does require us, under Article 10, to give Huntington a written notice of default. If that default continues for 30 days, the landlord, Austin Property Associates, had the option and right to terminate without further notice. Curiously, Huntington didn't assert until months after the summary judgment by the district court in May of 2017 and after the termination in June of 2000 any issue regarding the adequacy of notice or any conditions preceding to a termination. In fact, Huntington had judicially admitted on multiple occasions that all conditions preceding to a termination had been satisfied. In any event, they also conceded in the December 2015 forbearance letter agreement that they were obligated to provide insurance and that the failure to do that would give rise to an immediate termination of the lease. Finally, I've cited in our brief and in the record multiple instances of actual notice of default and demands for performance. I will cite the court to one in particular. It is the same letter I was just referring to you that is supported by my invoices and time. It is the March 7, 2016 letter to Huntington's attorneys. It's in the record at 225. In that letter, I write, among other things, Master Landlord continues to insist upon strict and full performance of the terms and conditions of the master lease. The lease obligates the lessee at Huntington at its expense to keep and affect insurance on the lease premises. Master Landlord, that's Austin Property Associates, further demands that Huntington immediately provide proof of insurance required under the master lease and as promised in the December 23, 2015 letter agreement. That was our forbearance agreement. I go on to write, in the event Huntington fails to perform and satisfy each of the demands made herein, including the demand to provide the insurance, Master Landlord will exercise any and all remedies available to it under the terms of the master lease and or at law. Please be advised that the master lease permits the Master Landlord to, at its option, declare the term of the master lease ended. I don't know what could be more clear about a notice of default, a demand for performance, and an opportunity to cure. This was, again, in March of 2016, six months before we filed this lawsuit and more than a year before we were forced to terminate. Unless the panel has any questions, I'm going to give you back the rest of my time. We'll take it. Thank you.  Thank you. Let's talk about the evidence that he said was the $5 million in Mr. Kehoe's affidavit. That $5 million was in connection with the motion for summary judgment. And it was in connection with the motion for summary judgment in that to establish damages. In fact, that's the damages that the trial court found were damages to grant the motion for summary judgment. But in that affidavit, Mr. Kehoe says that the value of the property is $5,000 and that the failure to have insurance on the property causes its loans to be in default. And therefore, for diminution of value of the property, that's how he estimates that they're going to be the $5 million. In the record also, less than 60 days later, when they wrongfully terminated our lease in June of 2017, Mr. Kehoe represents to our subtenant in the agreement regarding sublease, which was, again, just simply cutting us out of the middle and taking the rent from our tenant and entering into that agreement. Mr. Kehoe says, I warrant and represent to you that we have no liens and no loans on this property. Something is wrong in both of that testimony. Either he somehow represented to the court that his damages were $5 million when he said that the failure to put insurance on it would cause the loan to be in default. Or he was misrepresenting two months later to the new tenant that warrant and represent that there were no loans on the property. That's the way that all of this has occurred in this case. When you talk about a notice of default, the notices of default, the law construes that a notice of default must be strictly complied with, especially when you're going to take somebody's real property interest. The law abhors the forfeiture of real property. And therefore, when you have a default, you must specifically, pursuant to the actual lease, provide the notice of default. If the amount at stake in this lawsuit is so small, as you urge, why are we here and why is there an appeal? It just seems to me that this was a big deal because your client ends up, when things go south, bringing in new counsel, filing an appeal. It seems like there is a significant financial dispute between the parties. Well, why it's important to my client is that it has options on this lease that go through 2034. And when somebody wrongfully terminates your leasehold interest without giving you the notice of default that you're entitled to, then yes, that's a fight. That's the fight because they've wrongfully terminated the lease. We suggested that we would – we wanted to bring those claims in that lawsuit. And Magistrate Judge Lane said out loud, first of all, I thought this lawsuit was only about $5,000 to begin with. And then, you know, you might have a wrongful termination claim. I don't know about all that, but you can bring that some other time. Well, if we bring that some other time in another lawsuit, clearly we've got raised judicata claims that they're going to raise. And so therefore that's why we should have been allowed to bring that in that lawsuit. That lawsuit was set for trial a year – over a year later when we sought to bring our counterclaim. On new evidence, the new evidence being after they terminated the lease and after we got the insurance that the court said that you needed to get that's in the record. Within that 30 days, without the notice of default, we got the insurance. But they sent the notice of default, and when we went to try to bring counterclaims in the case, they said we want to dismiss the rest of the case. All right. And ask that you reverse and find that there's no subject matter jurisdiction. All right. Thank you. Thank you both for helping us understand this case. Before I call the next case, I want to –